(110 So. 334)

No. 27834.

## BROCK v. FIRST NAT. BANK OF PINE-VILLE.

(May 31, 1926. On Rehearing, Nov. 2, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Banks and banking** ⬤⟿154(8).

Where no reliance could be placed on records of banks, and evidence did not show true nature of accounts between them, judgment cannot be given for either on its claim against other.

2. **Costs** ⬤⟿60.

Costs of unsuccessful suit by bank commissioner to collect credit showing on face of records of insolvent bank as due it, in which defendant's reconventional demand was rightly rejected, should be equally divided.

Appeal from Ninth Judicial District Court, Parish of Rapides; R. C. Culpepper, Judge.

Action by J. S. Brock, liquidator of the Bank of Pollock, against the First National Bank of Pineville. From a judgment rejecting plaintiff's demand and allowing defendant's reconventional demand, plaintiff appeals. Judgment affirmed, in so far as it rejects plaintiff's demand; otherwise, set aside, and demand in reconvention rejected.

Peterman, Dear & Peterman, of Alexandria, for appellant.

P. M. Milner, of New Orleans, and Hawthorn & Stafford, of Alexandria, for appellee.

THOMPSON, J. [1] The Bank of Pollock was closed on March 21, 1925, and its affairs taken over by the state bank commissioner for purposes of liquidation.

The books of the bank showed an indebtedness due by the First National Bank of Pineville of $4,835. After an ineffectual attempt to get an adjustment, this suit was brought for said amount, together with an additional sum of $1,000 which it is alleged was received by the Pineville bank on or about March 26, 1925.

The defendant bank denied owing the Pollock bank any sum whatever and alleged that the Pollock bank owed it the sum of $4,391.60, for which judgment was asked in reconvention.

The judgment from which this appeal is taken rejected the plaintiff's demand, but allowed the defendant's reconventional demand.

There is involved in the facts which led up to and resulted in this litigation a certain element of pathos, as well as of tragedy.

James A. Christian was cashier of the Bank of Pollock for some six or eight years and until about January, 1924. He became cashier and active manager of the Pineville bank when it opened in April, 1924. When he left the Pollock bank his son Charles S. Christian was elected cashier and had the active management of the bank. Through the gross mismanagement and diversion of the assets, the Bank of Pollock failed.

And for a like cause the cashier of the Pineville bank was discharged and a suit filed against his bondsman (a surety company) for a shortage of some $8,000.

Both father and son were indicted for embezzlement of the funds of the Pollock bank. The father was tried and convicted and is now serving a term in the penitentiary. The son confessed his guilt, but the record does not show that he has been tried.

It is mainly upon the records of the two banks as made up by the respective defaulting cashiers that each bank relies to sustain its claim against the other.

An audit of the books of the Pollock bank under direction of the bank commissioner showed that the said bank had on deposit in the defendant bank the amount claimed in the petition, that is to say $4,835.

The books did not show any liability of the Pollock bank to the defendant bank.

An audit of the books of the Pineville bank by a certified accountant employed by the bank showed that said bank had on deposit in the Pollock bank the amount claimed in re-

convention. The books did not show any indebtedness due by the Pineville bank to the Pollock bank.

Were it possible to give full faith and credit to the books of each bank, the issue would be easily solved. The mere mathematical deduction would show a balance in favor of the plaintiff bank.

The general statement of the Pollock bank made by the cashier under oath on January 9, 1925, and furnished to the bank examiner under the head of assets, showed that said bank had on deposit with the defendant bank the sum of $4,835. There was no amount listed under the head of liabilities as "due to other banks or bankers." The statement was a copy from the general ledger of that date.

The amount as stated to be due from the defendant bank was made up of various items exhibited on the remittance sheets of the Pollock bank beginning with June 25, 1924, and ending with November 28, 1924. These amounts aggregated $7,835, but were subject to three credits totaling $3,000.

The bank examiner, on January 10, 1925, sent the defendant bank, for verification, a statement showing the balance of $4,835 due by the defendant bank to the Pollock bank as of date January 9, 1925, which statement was returned to the examiner with the notation thereon "received and credited," and was signed by the cashier, for the defendant bank.

The additional $1,000 claimed by plaintiff as having been remitted to the defendant bank on March 26, 1925, is admitted in the statement attached to defendant's answer.

In further support of the fact that the plaintiff bank had an account with the defendant and had funds to its credit, it is shown that the defendant bank paid two checks drawn on it by the Pollock bank; one for $1,000, paid July 19, 1924, and one for $1,500, dated December 3, 1924. These two checks were paid by the defendant bank through the Rapides bank. They appear to be credited to the defendant on the statement of the Pollock bank, but there is no entry of them in the books of the defendant bank.

Mr. Foster, president and one of the directors of the plaintiff bank, testified that his bank carried a part of its legal reserve in the Bank of Pineville.

It is further shown by at least two witnesses that the cashier of the defendant bank, who was also a director of the plaintiff bank, was present at several meetings of the directors of the Pollock bank when the statement of the bank was read out in detail showing the amount carried by the bank with its several bank correspondents, and that no objection was made by the cashier of the defendant bank to the claimed deposit in favor of the Pollock bank.

It further appears that among the correspondents of the Pollock bank as printed on the loose leaf ledger sheet of date February 6, 1925, is the First National Bank of Pineville.

These circumstances unquestionably have some probative force in corroboration of the books of the plaintiff bank, but after all is said we come back to the question, Do the books themselves exhibit the true relation of creditor and debtor between the two banks?

Manifestly they do not, for they do not show that any amount had ever been received by the plaintiff bank and placed to the credit of the defendant bank.

Now the same situation exists with reference to the books of defendant bank.

As we have already noted, the statement prepared by the accountant of the defendant bank from the books of that bank, shows remittances to and deposits with the plaintiff bank beginning with July 19, 1924, and ending on March 3, 1925, amounting in the aggregate to $7,076.60. which is $759.40 less than the books of the plaintiff show was deposited by it with the defendant bank.

If we deduct from the balance due defendant bank as shown by the accountant's state-

ment the sum of the two checks paid through the Rapides bank and not credited to the Pollock bank, the balance claimed by defendant would be reduced to $1,891.63, as against $5,835 claimed by the plaintiff.

As we said with reference to the claim of the plaintiff bank, there is evidence to show that the defendant bank had at various times deposited various amounts with the plaintiff bank. It is admitted that there was among the records of the plaintiff bank a deposit slip evidencing a deposit of $3,300, being the first deposit claimed to have been made by the defendant. The bank examiner, in his letter to the defendant bank, stated that certain records were discovered indicating that such an account as claimed by defendant bank did exist, but that it seems to have been dissipated by the cashier of the Pollock bank.

From all of which it unmistakably follows that each bank carried a debit charge against the other, but neither bank kept a record of the credits due the other bank. The records of both banks have been falsely and fraudulently kept and are misleading. Confessedly the records of neither bank evidence all the transactions had between the two banks. The records admittedly do not reflect the true condition and true relation of one bank with the other.

The defendant, in its answer, alleges that there was a fraudulent conspiracy between the father and son in order to screen the acts of the son. They were both interested in the Pollock Motors Company and the funds of the Pollock bank were used to further the joint interest of the father and son.

The son admits his fraudulent acts and defalcation and the falsity of the records of the bank.

The father was convicted of embezzlement of the funds of the Pollock bank, being so charged along with his son, and it is con-clusively shown that the books of the defendant bank were likewise falsely kept and that they did not show the payment of the two checks amounting to $2,500.

And, moreover, the defendant is now suing for $8,000 alleged shortage caused by the fraud and dishonest acts of its cashier.

In these circumstances it is impossible for the court to reach any satisfactory conclusion that either bank is indebted in any definite amount to the other bank. Obviously no greater faith and credit can be given to the recorded transactions of one bank than the other. We feel that, in view of all of the circumstances in the case, to render a judgment in favor of either bank against the other would be to enrich the creditors, depositors, and stockholders of such bank to the prejudice of the creditors, depositors, and stockholders of the other one.

[2] In conclusion we may say that the bank commissioner was justified in instituting this suit. On the face of the records of the bank it was his duty to do so. For this reason we think all of the costs should be equally divided.

For the reasons assigned, that part of the judgment which rejected the plaintiff's demand is affirmed; otherwise, the judgment is set aside, and the demand in reconvention is likewise rejected. All of the costs to be paid equally by plaintiff and defendant.

### On Rehearing.

ST. PAUL, J. On reviewing this case once more, we again reach the conclusion that there is not sufficient evidence in the record to support either the main or the reconventional demand and that our former decree was correct.

Our former decree is therefore reinstated, and made the final judgment of the court.